**E-Filed 9/30/2009**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| HERMINIA LORENZO CRUZ<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL COLLECTION CORPORATION, a California corporation, CHARLES D. HENDRICKSON, individually and in his official capacity,<br><br>Defendant. | Case Number 08-00991 JF (RS)<br><br>ORDER[1] GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff Herminia Lorenzo Cruz ("Plaintiff") moves for summary judgment on her claims against Defendants International Collection Corporation ("ICC") and its owner/director Charles Hendrickson ("Hendrickson") (collectively "Defendants"). Defendants have filed a cross-motion for summary judgment. The Court heard oral argument on September 4, 2009. For the reasons set forth below, Plaintiff's motion will be granted, and Defendants' motion will be denied.

## I. BACKGROUND

On or about April 15 and 16, 2006, Plaintiff incurred financial obligations by writing two

[1] This disposition is not designated for publication in the official reports.

checks to Harrah's Casino in Reno, Nevada. Complaint ¶ 11. The checks subsequently bounced. Sometime thereafter, the debt was sent to Defendants for collection. *Id.* at ¶ 13.

On October 19, 2006, Defendants sent Plaintiff an initial collection letter seeking recovery of $500.00 in principal and $25.47 in accrued interest for a total amount of $525.47. *Id.* at ¶ 14, 18 and Exhibit 1. This letter stated:

> As required by law, you are hereby notified that a negative credit report reflecting on your credit rating may be submitted to a credit reporting agency, if you fail to fulfill the terms of your credit obligations.

*Id.* at ¶ 22 and Exhibit 1.

On or about October 27, 2006, Plaintiff sent Defendants a letter indicating that she disputed the debt and refused to pay the amount in question. *Id.* at ¶ 23 and Exhibit 2. After receiving this notice, Defendants continued to communicate with Plaintiff in an attempt to collect the debt. *Id.* at ¶ 27.

On October 31, 2006, Defendants sent Plaintiff a second collection letter indicating that Plaintiff owed $500.00 in principal, $50.00 in returned check fees, and $27.11 in interest for a total amount of $577.11. *Id.* at ¶ 28, 29 and Exhibit 4. This letter stated:

> Our attorneys have advised us that under California law 1719 Civil Code, states that unless cash or certified funds in the amount of your NSF check(s) plus the cost of $25.00 for each returned item is received within 30 days from the date of this letter, we are entitled to recover for our client, the amount of the check(s), plus treble damages up to $1,500.00 for each bad check.
>
> If suit is filed, you will also be responsible for interest, court costs, and service for process fees. The court may also award us attorney fees.

*Id.*

On November 6, 2006, Defendants sent Plaintiff a third letter indicating that Plaintiff owed $500.00 in principal and $27.93 in interest for a total amount of $527.93. *Id.* at ¶ 38, 40 and Exhibit 5. This letter stated that Defendants "report to Experian, Equifax and Trans Union." *Id.* at ¶ 44.

On November 24, 2006, Defendants sent Plaintiff a fourth letter indicating that Plaintiff

owed $500.00 in principal and $30.40 in interest for a total amount of $530.40. *Id.* at ¶ 47 and Exhibit 6.

On December 11, 2006, Defendants sent Plaintiff a fifth letter indicating that Plaintiff owed $500.00 in principal, $1,500.00 in treble damages, and $32.72 in interest for a total amount of $2,032.72. *Id.* at ¶ 53 and Exhibit 7. This letter also stated that the three credit bureaus Equifax, Experian and Trans Union had been notified of the unpaid debt. *Id.* at ¶ 57.

On December 28, 2006, Defendants sent Plaintiff a sixth letter indicating that Plaintiff owed $500.00 in principal, $1,500.00 in treble damages, and $35.05 in interest for a total amount of $2,035.05. *Id.* at ¶ 60 and Exhibit 8.

On or about December 28, 2006, Plaintiff mailed Defendants another letter. *Id.* at ¶ 65 and Exhibit 9. This letter represented Plaintiff's second refusal to pay the debt. *Id.*

On January 8, 2007, Defendants sent Plaintiff a seventh letter indicating that Plaintiff owed $500.00 in principal, $1,500.00 in treble damages, and $36.56 in interest for a total of $2,036.56. *Id.* at ¶ 72 and Exhibit 11.

On February 21, 2007, Defendants sent Plaintiff an eighth letter indicating that Plaintiff owed $500.00 in principal, $1,500.00 in treble damages, and $42.59 in interest for a total amount of $2,042.59. *Id.* at ¶ 79 and Exhibit 12. This letter stated:

> BEFORE COMMENCING A LAWSUIT THROUGH THE OFFICES OF FRANKLIN LOVE, I AM OFFERING YOU THIS FINAL OPPORTUNITY TO PAY THIS ACCOUNT IN FULL OR TO MAKE SATISFACTORY PAYMENT ARRANGEMENTS.
>
> IF PAYMENT OR SATISFACTORY ARRANGEMENTS ARE NOT MADE WITHIN 10 DAYS HEREOF, I HAVE BEEN INSTRUCTED TO CONSIDER FILING A LAWSUIT THROUGH OUR LAWYER AGAINST YOU. SHOULD A LAWSUIT BE INITIATED, YOU COULD BE HELD TO PAY NOT ONLY THE PRINCIPAL SUM, BUT ALSO INTEREST, ATTORNEY FEES WHERE APPLICABLE AND COSTS OF SUIT. MR. LOVE HAS STATED THAT SHOULD A LAWSUIT BE FILED A JUDGMENT COULD BE ISSUED, WHICH COULD HAVE THE CONSEQUENCE OF SUBJECTING CERTAIN OF YOUR ASSETS TO GARNISHMENT OR SEIZURE. IN ADDITION, THIS ENTIRE MATTER COULD HAVE A NEGATIVE IMPACT ON YOUR CREDIT RATING.

*Id.* at ¶ 83 and Exhibit 12.

On February 19, 2008, Plaintiff filed the instant action. On June 2, 2008, this Court denied Defendants' motion to dismiss, and Defendants filed their Answer on June 9, 2008. On July 31, 2009, the parties filed the instant cross-motions for summary judgment.

**II. LEGAL STANDARD**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id*.

The standard applied to a motion seeking partial summary judgment is identical to the standard applied to a motion seeking summary judgment of the entire case. *Urantia Foundation v. Maaherra*, 895 F.Supp. 1335, 1335 (D. Ariz. 1995).

## III. DISCUSSION

Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, in order to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (quoting S.Rep. No. 382, 95th Cong.2d Sess. 4, reprinted in1977 U.S.Code Cong. & Admin.News 1695, 1699). In the Ninth Circuit, "whether the initial communication violates the FDCPA depends on whether it is 'likely to deceive or mislead a hypothetical 'least sophisticated debtor.''" *Terran v. Kaplan*, 109 F.3d 1428, 1431-32 (9th Cir. 1997) (quoting *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir.1996) (quoting *Swanson*, 869 F.2d at 1225)). Under this standard, the Court must consider whether "the least sophisticated debtor would likely be misled by the notice." *Swanson*, 869 F.2d at 1225.

### A. Hendrickson is a Debt Collector as Defined Under the FDCPA

"The inquiry as to whether a person is a debt collector is not case specific, but rather depends on whether that person 'regularly' collects debts - in other words a person cannot be considered a debt collector with regard to one debtor and not a debt collector with regard to another debtor." *Schutz v. Arrow Financial Services*, 465 F. Supp. 2d 872, 875 (N.D. Ill. 2006). "[A] person may regularly render debt collection services, even if these services are not a principal purpose of his business. Indeed, if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity; the person still renders them 'regularly.'" *Garrett v. Derbes,* 130 F.3d 317, 318 (5th Cir. 1997), citing, *Stojanovski v. Strobl & Manoogian, P.C.*, 783 F. Supp. 319, 322 (E.D. Mich. 1992).

Hendrickson testified at his deposition that he created ICC in October 1985, and is the company's sole owner, officer and director. It is undisputed that ICC's only business is debt collection, and that ICC has been Hendrickson's exclusive employer since January 1986. Hendrickson Deposition at 20:4-17. Hendrickson is in charge of marketing, paralegal duties,

referrals and obtaining new clients. He handles incoming and outgoing collection calls, sending out collection letters, following up on accounts with monthly agreements, and other activities. *Id.* at 21:15-21, 22:23 to 23:5, 27:2-9. These activities are sufficient to render him a debt collector for purposes of the FDCPA. Even when Hendrickson is engaging in marketing for ICC, he is performing debt collection activities under the FDCPA. "It seems highly unlikely that [ICC] could have maintained a collection business without [Hendrickson's] services" in obtaining collection accounts. *See West v. Costen*, 558 F. Supp. 564, 584 (W.D. Va. 1983) (finding president of a collection agency a "debt collector" within the meaning of the FDCPA despite the fact that he did not personally engage in collections, when his job was to obtain new accounts from merchants and retailers).

**B. Nevada Law Applies**

Because the debt that is the subject of this action was incurred at Harrah's Casino in Reno, Nevada, that state's laws apply. Defendants argue that the Plaintiff's debt did not actually come into existence until the Casino attempted to cash her checks at a California bank. Defendants suggest that since the checks bounced in California, the debt was incurred in California rather than in Nevada. Defendants offer no authority for this construction of the FDCPA. Common sense dictates that the debt was incurred when Plaintiff signed the casino marker for $1,500.00 and took the cash. At that point she was obligated to repay the debt. *See Nguyen,* 116 Nev. 1171 (2000) (applying Nevada dishonored check laws to casino markers executed in Nevada by a Texas resident).

**D. The Continuing Violation Theory Applies to the Claims in This Case**

Defendants argue that Plaintiff is not entitled to summary judgment because the statute of limitations has passed "on all claimed allegations in certain paragraphs" of her complaint. Defendants already raised this argument in their motion to dismiss. In its Order denying that motion, the Court stated:

> Under 15 U.S.C. § 1692k(d), an action to enforce any liability pursuant to the FDCPA must be brought within one year from the date on which the violation occurred. However, conduct occurring outside the statute of limitations period is actionable under a continuing violation theory.

> *Joseph v. J.J. Mac Intyre Cos.*, 281 F. Supp. 2d 1156 (N.D. Cal. 2003). "The key is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts. If there is a pattern, then the suit is timely . . . and the entire course of conduct is at issue." *Id*. at 1161. Defendants do not dispute that Cruz has alleged a continuing pattern of communications by letter in connection with her FDCPA claim. Accordingly, Cruz is entitled to base her claims on the entire course of conduct she has alleged.

Defendants do not dispute that Plaintiff has alleged a continuing pattern of communications by letter in connection with her FDCPA claim. The volume of letters sent is irrelevant for purposes of establishing that a pattern in fact existed. Hendrickson's deposition testimony shows that Defendants mailed the subject letters to Plaintiff as part of a single collection strategy. Since the instant case was filed less than one year after Plaintiff received the final letter, the statute of limitations does not bar Plaintiff's claims.

**D. Defendants Violated the FDCPA**

Applicable Nevada law does not allow for the collection of interest and legal fees. Consequently, the representations in the collection letters that Plaintiff was liable for interest and fees violate the FDCPA.

**E. *Imperial Merchant Services v. Hunt* Does Not Raise a Question of Retroactivity**

Defendants argue that the decision of the California Supreme Court in *Imperial Merchant Services v. Hunt*, 47 Cal.4th 381 (2009), holding that a debt collector may not recover both a service fee under California Civil Code § 1719 *and* prejudgment interest, may not be applied "retroactively." As discussed above, Nevada law applies to Plaintiff's claims; the applicability of *Hunt* is therefore immaterial.

**F. The FDCPA is a Strict Liability Statute**

Defendants argue that it would be unfair to allow Plaintiff to pass bad checks and then recover for the manner in which Defendants sought to hold Plaintiff accountable for her debt. Defendants cite California law for the proposition that "no one can take advantage of [her] own wrong." *See* Cal. Civ. Code § 3517. As is discussed above, California law does not apply. Moreover, the FDCPA protects consumers regardless of whether they owe money to a creditor. Plaintiff is not seeking a release of the debt or judgment; she requests merely that the Court

enforce her rights under the FDCPA. Plaintiff has demonstrated as a matter of law that Defendants violated the FDCPA, and Defendants have failed to raise a triable issue of material fact as to any defense available to them.

**IV. ORDER**

Good cause therefore appearing, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is GRANTED, and Defendants' motion for summary judgment is DENIED.

DATED: September 29, 2009

JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

Fred W. Schwinn fred.schwinn@sjconsumerlaw.com, cand_cmecf@sjconsumerlaw.com, fschwinn@gmail.com

Larry Rothman tocollect@aol.com