FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LEONIDES LORENZO CRUZ, successor
in interest to Herminia Lorenzo
Cruz,
          *Plaintiff-Appellee,*

          v.

INTERNATIONAL COLLECTION
CORPORATION, a California
corporation and CHARLES D.
HENDRICKSON, individually and in
his official capacity,
          *Defendants-Appellants.*

No. 09-17449

D.C. No.
5:08-cv-00991-JF

OPINION

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted
November 14, 2011—San Francisco, California

Filed March 8, 2012

Before: John T. Noonan and Carlos T. Bea, Circuit Judges,
and Donald E. Walter, Senior District Judge.*

Opinion by Judge Bea

---

*The Honorable Donald E. Walter, Senior District Judge for the U.S.
District Court for Western Louisiana, sitting by designation.

2701

## COUNSEL

Larry Rothman, Larry Rothman & Associates, Orange, California, for the defendants-appellants.

Fred W. Schwinn, Consumer Law Center, Inc., San Jose, California, for the plaintiff-appellee.

## OPINION

BEA, Circuit Judge:

   Defendants-Appellants International Collection Corporation and Charles D. Hendrickson appeal the district court's grant of summary judgment in favor of plaintiff-appellee Her-

minia Lorenzo Cruz on her claim under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 and the district court's orders granting three of plaintiff's post-summary judgment motions. The notice of appeal was untimely filed as to the latter three post-summary judgment orders; we will dismiss these appeals for lack of jurisdiction.

In granting summary judgment for Cruz, the district court held that there was no genuine issue of material fact but that International Collection Corporation (ICC) had violated the FDCPA and that Hendrickson was personally liable as ICC's sole owner, officer, and director because he qualified as a "debt collector" under the FDCPA. We will affirm upon the grounds stated by the district court. Accordingly, we affirm the district court's order granting summary judgment under Federal Rule of Civil Procedure 56 for plaintiff.

## I.   Factual and Procedural Background

The relevant facts of this case are not in dispute. On April 15 and 16, 2006, Herminia Lorenzo Cruz wrote two checks to Harrah's Casino in Reno, Nevada. The checks bounced. Sometime thereafter, Harrah's assigned the claim based on the dishonored checks to International Collection Corporation (ICC) for collection. ICC sent a collection letter to Cruz on October 19, 2006 seeking recovery of $500 in principal and $25.47 in interest for a total of $525.47.

On October 27, 2006, Cruz sent a certified letter addressed to ICC stating that she disputed the debt and refused to pay the amount in question.

After receiving Cruz's letter, ICC continued to communicate with Cruz in an attempt to collect the debt. On October 31, 2006, ICC wrote a second collection letter to Cruz seeking to collect $500 in principal, $27.11 in interest, and $50 in "return check fee(s)." This letter stated:

> Our attorneys have advised us that under California law 1719 Civil Code, states [sic] that unless cash or certified funds in the amount of your NSF check(s) plus the cost of $25 for each returned item is received by us in 30 days from the date of this letter, we are entitled to recover for our client, the amount of the checks(s) [sic], plus treble damages up to $1500 for each bad check.

> If suit is filed, you will also be responsible for interest, court costs, and service for process fees. The court may also award us attorney fees.

*Id.*

On November 6, 2006, ICC sent Cruz a third letter stating that Cruz owed $500 in principal and $27.93 in interest, but nothing for a "return check fee," for a total of $527.93. On November 24, 2006, ICC sent Cruz a fourth letter stating that Cruz owed $500 in principal, nothing for "treble damages," and $30.40 in interest for a total balance of $530.40.

On December 11, 2006, ICC sent Cruz a fifth letter stating that Cruz owed $500 in principal, $1500 in treble damages, and $32.72 in interest for a total balance of $2032.72. On December 28, 2006, ICC sent Cruz a sixth letter stating that Cruz owed $500.00 in principal, $1,500.00 in treble damages, and $35.05 in interest for a total amount of $2,035.05. The same day, Cruz mailed ICC a second letter stating that Cruz disputed the debt and refused to pay.

On January 8, 2007, ICC sent Cruz a seventh letter stating that Cruz owed $500.00 in principal, $1,500.00 in treble damages, and $36.56 in interest for a total of $2,036.56. This letter stated all in capital letters: "WE HAVE SPENT A LOT OF TIME AND MONEY TRYING TO REACH YOU. WE NEED YOUR IMMEDIATE ATTENTION. THE SEVEN YEARS THIS WILL REMAIN ON ALL THREE CREDIT

BUREAUS HAS FAR REACHING EFFECTS. WE URGE
YOU TO CONSIDER YOUR ACTIONS AND TELE-
PHONE US . . . ." *Id.*

On February 21, 2007, ICC sent Cruz an eighth letter stat-
ing that Cruz owed $500 in principal, $1,500 in treble dam-
ages, and $42.59 in interest for a total amount of $2,042.59.
This letter stated, again all in capital letters:

> BEFORE  COMMENCING  A  LAWSUIT
> THROUGH THE OFFICES OF FRANKLIN LOVE,
> I AM OFFERING YOU THIS FINAL OPPORTU-
> NITY TO PAY THIS ACCOUNT IN FULL OR TO
> MAKE SATISFACTORY PAYMENT ARRANGE-
> MENTS.
>
> IF PAYMENT OR SATISFACTORY ARRANGE-
> MENTS ARE NOT MADE WITHIN 10 DAYS
> HEREOF, I HAVE BEEN INSTRUCTED TO
> CONSIDER FILING A LAWSUIT THROUGH
> OUR LAWYER AGAINST YOU. SHOULD A
> LAWSUIT BE INITIATED, YOU COULD BE
> HELD TO PAY NOT ONLY THE PRINCIPAL
> SUM, BUT ALSO INTEREST, ATTORNEY FEES
> WHERE APPLICABLE AND COSTS OF SUIT.
> MR. LOVE HAS STATED THAT SHOULD A
> LAWSUIT BE FILED A JUDGMENT COULD BE
> ISSUED, WHICH COULD HAVE THE CONSE-
> QUENCE OF SUBJECTING CERTAIN OF YOUR
> ASSETS TO GARNISHMENT OR SEIZURE. IN
> ADDITION, THIS ENTIRE MATTER COULD
> HAVE A NEGATIVE IMPACT ON YOUR
> CREDIT RATING.

*Id.*

On February 19, 2008, Cruz filed suit in the Northern Dis-
trict of California alleging various violations of the FDCPA

and various associated state tort claims related to the collection attempt. The suit named as defendants ICC and Charles D. Hendrickson ("the debt collectors"). *Id.* Hendrickson is, and has always been, the sole owner, director, and officer of ICC.

On July 31, 2009, Cruz filed a motion for summary judgment. On the same day, the debt collectors filed a cross-motion for summary judgment in their favor. In her response to the debt collectors' cross-motion for summary judgment, Cruz waived her state tort claims. On September 30, 2009, the district court granted summary judgment for Cruz and denied the debt collectors' cross-motion for summary judgment. The district court held that the debt collectors had violated the FDCPA by claiming in the communications to Cruz that ICC was entitled to treble damages, interest, and legal fees under California law, which was false because Nevada law applies to the debt and Nevada law does not permit the collection of interest and legal fees. The debt collectors timely filed a notice of appeal 29 days later.

On October 9, 2009, Cruz filed a motion to alter or amend the judgment to include statutory damages and attorney's fees. On December 18, 2009, the district court granted Cruz's motion to amend the judgment and awarded $1000 in statutory damages under the FDCPA and reasonable attorney's fees and costs.

On April 7, 2010, Cruz moved for attorney's fees. On June 17, 2010, the district court granted this motion in part, granting Cruz $22,656.17 in attorney's fees and $2,854.81 in costs.

On November 22, 2010, the debt collectors filed a motion to vacate and dismiss the action based on the fact that plaintiff Herminia Lorenzo Cruz had died. On December 9, 2010, Appellee filed a motion to substitute Leonides Lorenzo Cruz, Herminia Lorenzo Cruz's son and successor in interest, as plaintiff and to amend the judgment *nunc pro tunc*. On Febru-

ary 8, 2011, the district court granted the motion to substitute the plaintiff.

On March 14, 2011, the debt collectors filed an "amended notice of appeal," thirty-four days after the Feb. 8 order substituting the successor and amending the judgment. The amended notice purported to amend the notice of appeal of the Sept. 30 order to include appeals of the Dec. 18 order (award of $1000 statutory damage award to Cruz), the June 17 order (award of attorney's fees to Cruz), and the Feb. 8 order (substitution of plaintiff).

## II.  Jurisdiction and Standard of Review

This court has jurisdiction over final orders of the district court under 28 U.S.C. § 1291. The parties do not dispute this court's jurisdiction to review the district court's September 30, 2009 order granting summary judgment to Cruz and denying summary judgment to the debt collectors. The parties are in dispute regarding this court's jurisdiction over the other three orders at issue based on the timeliness of the notice of appeal, discussed below at Section V.

This court reviews *de novo* a district court's summary judgment ruling. *Baccei v. United States*, 632 F.3d 1140, 1144 (9th Cir. 2011). "In doing so, we must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law." *Id.* at 1145 (internal quotation marks and alterations omitted).

## III.  The grant of summary judgment against ICC

The district court granted Cruz summary judgment on her FDCPA claim, holding that Cruz's cause of action was not barred by the statute of limitations and that ICC's letters to Cruz violated the FDCPA by falsely claiming ICC was enti-

tled to interest and legal fees, although Nevada law does not permit such a recovery. The debt collectors appeal these holdings and also argue that they are entitled to an affirmative defense that any violation of the FDCPA resulted from a bona fide error.

## A. ICC's letters to Cruz violated the FDCPA.

[1] The FDCPA bars the use of any false, deceptive, or misleading representation in connection with the collection of any debt. 15 U.S.C. § 1692e.[1] The FDCPA is a strict liability statute; there is no mental state required to violate it. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011); *Clark v. Capital Credit & Collection Serv.*, 460 F.3d 1162, 1175 (9th Cir. 2006). The FDCPA also prohibits contacting a debtor who has "notified a debt collector in writing that the consumer refuses to pay a debt . . . ." 15 U.S.C. § 1692c(c).

ICC sent letters to Cruz claiming that Cruz was liable for pre-judgment interest, fees, and treble damages. The parties agreed at oral argument that Nevada law governs this debt, and we assume, without deciding, that this is correct.[2]

---

[1]Section 1692e states:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . . .

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

[2]The choice of law question might be complicated by the non-enforceability of gambling debts in California. *See Metropolitan Creditors Service v. Sadri*, 15 Cal. App. 4th 1821, 1827 (1993). However, because we proceed based on both parties' agreement that Nevada law governs, we need not address this question here. Besides, the record does not establish whether Cruz's check was issued to repay a gambling debt or for the delivery of gambling chips.

[2] Under Nevada law, a debt collector may not collect any interest or fees unless the interest or fees have been added to the principal by the creditor before the debt collector received the item of collection. Nev. Rev. Stat. § 649.375(2)(a) (2011). Here, there is no evidence that Harrah's Casino added any interest or fees to its claim for $500 before it assigned the claim for collection to the debt collectors. For aught that appears, ICC added those items to the claim. It was ICC who sent Cruz numerous letters stating that Cruz owed varying amounts for interest and fees in addition to $500 in principal. As Nevada law does not permit ICC to add nor to collect such interest and fees, the communications were false and misleading (by suggesting that ICC was entitled to collect such fees) and violated the FDCPA. Nevada law also permits a creditor to collect a maximum of $500 in treble damages for each check written without sufficient funds on deposit. Nev. Rev. Stat. 41.620(1) (2011). The fifth, sixth, seventh, and eighth letters sent by ICC to Cruz stated that Cruz owed $1,500 in treble damages, when the maximum ICC could have collected would be $500 for each check, for a total of $1000.[3]

[3] Further, the FDCPA prohibits contacting a debtor who has "notified a debt collector in writing that the consumer refuses to pay a debt . . . ." irrespective of whether the statement is false under state law or otherwise. 15 U.S.C. § 1692c(c). There are three limited exceptions to this prohibition. *Id.* As this court has explained, those exceptions are:

> (1) to advise the consumer that the debt collector's further efforts are being terminated; (2) to notify the

---

[3]Even if we held that California law governed this debt, some of the letters sent by ICC also included statements false under California law. California law permits a debt collector to recover either a service charge and treble damages or pre-judgment interest, but not all three. *Imperial Merch. Servs. v. Hunt*, 47 Cal. 4th 381, 384 (2009) (applied by this court in *Imperial Merch. Servs. v. Hunt*, 580 F.3d 893, 894 (9th Cir. 2009)). ICC sent letters to Cruz attempting to collect both interest and "return check fee(s)," and also sent letters attempting to collect both treble damages and interest.

consumer that the debt collector or creditor may
invoke specified remedies which are ordinarily
invoked by such debt collector or creditor; or (3)
where applicable, to notify the consumer that the
debt collector or creditor intends to invoke a speci-
fied remedy.

*Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d
1162, 1169 (9th Cir. 2006). A settlement offer is an example
of a "specified remedy." *See Lewis v. ACB Business Services,
Inc.* 135 F.3d 389, 399 (6th Cir. 1998) (holding that a letter
that "can be construed as a type of settlement offer" fell
within the exception in § 1692c(c)(2)).

[4] In this case, Cruz sent a letter entitled "REFUSE TO
PAY LETTER" to ICC on October 27, 2006 stating, "I have
enclosed a copy of the last collection letter that you sent to
me. In this regard, please be advised that I dispute this debt
and refuse to pay." She sent this letter certified mail, and Hen-
drickson signed to receive it on October 31, 2006. ICC contin-
ued to send Cruz letters after this. None fall under any of the
three exceptions. They were merely continued attempts to col-
lect. Therefore, ICC's letters to Cruz also violated § 1692c(c)
of the FDCPA.

## B.  The debt collectors have waived the argument that Cruz's cause of action was barred by the statute of limitations.

In the decision below, the district court rejected the debt
collectors' argument that the FDCPA's one-year statute of
limitations barred Cruz's suit. *See* 15 U.S.C. § 1692k(d). On
this appeal, the debt collectors did not argue in their opening
brief that the statute of limitations barred Cruz's suit. This
argument is waived. "We review only issues which are argued
specifically and distinctly in a party's opening brief." *Green-
wood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (citing *Miller
v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986)).

**C.   The debt collectors have waived any bona fide error defense.**

The debt collectors argue that they are not liable under § 1692e because they made a mistake at the time they sent the collection letters as to which state's law governed the debt. They cite 15 U.S.C. § 1692k(c), which states that "[a] debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error . . . ." This claim of bona fide error as a defense was neither presented by evidence nor argued to the district court. "To have been properly raised below, the argument must be raised sufficiently for the trial court to rule on it." *Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000) (internal quotations omitted). The argument was not properly presented as a part of the motion for summary judgment. *See* FRCP 56(a) ("A party may move for summary judgment, identifying *each claim or defense* . . . on which summary judgment is sought." (emphasis added)). As a consequence, the district court below did not address this argument at all. "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 120-121 (1976). Because this argument was not raised in the debt collectors' motion for summary judgment below and the district court did not decide it, this court declines to resolve the question for the first time on appeal.

**IV.   The grant of summary judgment against Hendrickson**

The debt collectors also appeal the district court's determination that Hendrickson is personally liable under the FDCPA as a "debt collector" within the meaning of the statute. The debt collectors argue that the claims against Hendrickson personally should have been dismissed because no evidence sup-

ports holding Hendrickson personally liable for any violation of the FDCPA. We hold that Hendrickson is liable under the FDCPA since he qualifies as a debt collector under the FDCPA and that there is no triable issue of material fact but that his personal acts were sufficient to render him personally liable for violations of the FDCPA.

### A.  Hendrickson qualifies as a debt collector under the FDCPA.

[5]  Section 1692a(6) defines a "debt collector" for the purposes of the FDCPA. A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* We have previously held that an individual working for a corporation may independently qualify as a debt collector under the statute. *Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1513 (9th Cir. 1994) ("Attorneys, *like all other persons*, are subject to the definition of 'debt collector' in 15 U.S.C. § 1692a(6)").

[6]  Hendrickson is the sole owner, officer, and director of ICC. ICC has been his sole employer since January 1986. Hendrickson himself stated at a deposition that he "ha[s] to do everything" for ICC, including "collection duties." The various duties that Hendrickson performed as ICC's sole officer and director qualify him as one "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Under *Fox*, Hendrickson qualifies as a debt collector.

**B.   Hendrickson personally violated the FDCPA.**

[7] The district court granted summary judgment for Cruz and against Hendrickson, focusing its reasoning on the fact that Hendrickson qualifies as a debt collector under the FDCPA. As discussed above, we agree that Hendrickson so qualifies. However, the fact that an individual qualifies as a debt collector of course does not necessarily mean that the individual is a debt collector who has violated the FDCPA; the FDCPA does not prohibit merely qualifying as a debt collector but instead prohibits debt collectors from taking certain specific actions. 15 U.S.C. § 1692. The next question is whether that debt collector *has taken an action* that violates the FDCPA, such as "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The inquiry is therefore a two-step process, in which we must determine 1) whether the individual qualifies as a debt collector, and 2) whether that individual has taken an action that violates the FDCPA.[4] Thus, Hendrickson's liability turns on whether he took some action sufficient to render him personally liable for ICC's violations.

[8] The Ninth Circuit has not yet reached the issue of what kind of action the officer of a debt collection company must

---

[4]In addressing the individual liability under the FDCPA of officers whose debt collecting companies have violated the Act, our sister circuits have focused primarily on the first step, the resolution of whether or not an officer of a debt collection company meets the definition of debt collector; this is a point on which they are divided. *Compare Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 437-38 (6th Cir. 2008) ("[S]ubjecting the sole member of an LLC to individual liability for violations of the FDCPA will require proof that the individual is a 'debt collector,' but does not require piercing of the corporate veil."), *with Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F. 3d 1057, 1059 (7th Cir. 2000) ("[Shareholders or employees of debt collection companies] do not become 'debt collectors' simply by working for or owning stock in debt collection companies . . . except perhaps in limited instances where the corporate veil is pierced.").

take to be personally liable under the FDCPA. There is an open question whether, if an officer qualifies as a debt collector, that officer may be held personally liable based solely on the action of serving in his role as officer of the company. We need not reach this question in this case, however, as Hendrickson himself was personally involved in at least one violation of the FDCPA present in this case.

**[9]** The record reflects that Hendrickson was not merely the officer and owner of ICC, uninvolved in the collection attempts against Cruz. Hendrickson explained in his deposition that ICC had a policy that letters to debtors were sent by the person who signed the letter. An employee named Alex Rogel was assigned to and had been handling Cruz's debt, and signed the first letter to Cruz. Despite this, when Cruz sent ICC a certified letter disputing the debt and refusing to pay, Hendrickson, not Rogel, signed to receive that letter on October 31, 2006. Hendrickson also admitted at his deposition that he signed Alex Rogel's name to the fourth letter to Cruz, sent on November 24, 2006. The signature on that letter includes Hendrickson's own initials "C.H." after the signature.

**[10]** The fourth letter, like the other letters, falsely claims that ICC is entitled to collect interest on the principal; in fact, Nevada law only permits a debt collector to collect interest or fees if the interest or fees have been added to the principal by the creditor before the debt collector received the item of collection. Nev. Rev. Stat. § 649.375(2)(a) (2011). Therefore, by signing the letter, Hendrickson "use[d a] false, deceptive, or misleading representation . . . in connection with the collection of [a] debt" and therefore violated § 1692e. As discussed above, the 'bona fide error' defense is not properly before this court. As discussed above, the fourth letter also violated § 1692c(c) because Cruz had refused to pay the debt in writing before the fourth letter was sent. Therefore, the district

court's grant of summary judgment against Hendrickson is affirmed.[5]

## V.  The three post-summary judgment orders

In addition to appealing the district court's grant of summary judgment to plaintiffs, defendants also attempt to appeal the Dec. 18, 2009 order amending the judgment to include damages, the June 17, 2010 order granting Cruz attorney's fees, and the Feb. 8, 2011 order permitting the substitution of Leonides Lorenzo Cruz for Herminia Lorenzo Cruz as plaintiff. Federal Rule of Appellate Procedure (FRAP) 3 and 4 state that a party wishing to appeal from the district court to the court of appeals must file a notice of appeal with the district court within 30 days after the judgment or order appealed from is entered.[6] If there has been no timely notice of appeal from an order, a circuit court of appeal has no jurisdiction to review that order. *Browder v. Director, Dep't of Corrections of Illinois,* 434 U.S. 257, 265 (1978). "It is the filing of a notice of appeal that invokes our jurisdiction and establishes the issues to be addressed. A timely notice of appeal from the judgment or order complained of is mandatory and jurisdictional." *Whitaker v. Garcetti,* 486 F.3d 572, 585 (9th Cir. 2007). Even if neither party objects to an untimely notice of appeal, we must raise the issue *sua sponte. See Hostler v. Groves,* 912 F.2d 1158, 1160 (9th Cir. 1990).

[11] Because of the "mandatory and jurisdictional" nature of notices of appeal, *Whitaker,* 486 F.3d at 585, the doctrine of "relation back" that may apply to complaints does not

---

[5]The district court's reasoning differed from ours here. However, this court may affirm the district court's decision on any basis supported by the record. *United States v. State of Wash.,* 641 F.2d 1368, 1371 (9th Cir. 1981).

[6]This rule applies in civil cases where the United States is not a party, such as this one. FRAP 4 sets different time limits in other situations not relevant here.

apply to an amended notice of appeal. Federal Rule of Civil Procedure 15(c)(1) provides that amendments to a complaint may "relate back" to the date of the original pleading if the amended pleading arises "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." However, the failure to file a notice of appeal differs from the expiration of many statutes of limitations: the former necessarily deprives this court of jurisdiction, while the latter does not always deprive this court of jurisdiction.[7] For example, this court has recognized the Supreme Court's holding that AEDPA's statute of limitations, 28 U.S.C. § 2244(d), is not jurisdictional. *Lee v. Lampert*, 653 F.3d 929, 933 (9th Cir. 2011). In contrast, as discussed above, the lack of a timely filed (or timely amended) notice of appeal deprives this court of jurisdiction. *Whitaker*, 486 F.3d at 585.

This difference is reflected in the respective Federal Rules of Procedure governing complaints and notices of appeal. Unlike Federal Rule of Civil Procedure (FRCP) 15, which creates a standard based on whether the amendment arises out of the same "conduct, transaction, or occurrence," FRAP 3 and 4 establish a hard rule based on the number of days that pass: a prospective appellant has 30 days to file a notice of appeal. Nothing in the Federal Rules of Civil or Appellate Procedure establishes any exception for notices of appeal comparable to the doctrine of relation back for complaints.

**[12]** In this case, the debt collectors did not file their "amended" notice of appeal adding any of these orders to the original notice of appeal until March 14, 2011. This was 461 days after the Dec. 18, 2009 order, 280 days after the June 17,

---

[7]Some statutes of limitations are jurisdictional. *See, e.g. Adams v. United States*, 658 F.3d 928, 933 (9th Cir. 2011) (holding that the Federal Tort Claims Act's six month statute of limitations is jurisdictional). FRCP (c)(1)(A) provides for such statutes by holding that relation back is permitted only when "the law that provides the applicable statute of limitations allows relation back."

2010 order, and 34 days after the Feb. 8, 2011 order. Thus, the amended notice of appeal was not a timely notice of appeal for any of those three orders as it was more than 30 days after each order. Because there was no timely notice of appeal for these orders, this court lacks jurisdiction to hear appeals of the orders.

Though the debt collectors agree that it is a mandatory requirement that the original notice of appeal be timely, they argue that subsequent appeals are not "subject to this mandatory requirement." The debt collectors argue that FRAP 4(a)(3) provides "additional time for filing cross or other separate appeals." This argument lacks merit. FRAP 4(a)(3) applies to appeals by "any *other* party" (emphasis added), allowing *other* parties 14 days to file a notice of appeal after a first party files a notice of appeal. *See Bryant v. Technical Research Co.*, 654 F.2d 1337, 1342 (9th Cir. 1981) (holding that FRAP 4 did not prevent this court from considering a protective appeal by the prevailing party below once this court had jurisdiction based on a properly filed notice of appeal by the losing party). Nothing in the rule allows one party to file a second notice of appeal late merely because that party had previously filed a first notice of appeal. Even if the rule did permit a party to bootstrap its own second notice of appeal, it would not apply to this case. The debt collectors submitted the amended notice of appeal 511 days after their first notice of appeal—substantially more than the 14 days discussed in the rule.

[13] Therefore, this court lacks jurisdiction to review the Dec. 18 order, the June 17 order, and the Feb. 8 order and the portions of the appeal relating to those orders is dismissed.

## VI.  Conclusion

Because ICC sent letters to Cruz representing it was entitled to collect interest and fees when governing Nevada law did not permit ICC to collect interest and fees, ICC violated

the FDCPA and the district court properly granted summary judgment in favor of Cruz. The grant of summary judgment against ICC is therefore affirmed.

Further, because Hendrickson qualifies as a debt collector and signed one of the false letters, he is personally liable for violating the FDCPA. The district court's grant of summary judgment against him is therefore affirmed.

In addition, because there was no timely notice of appeal regarding the district court's Dec. 18 order, June 17 order, and Feb. 8 order, the appeal with respect to those orders is therefore dismissed.

**AFFIRMED IN PART, DISMISSED IN PART.**